1816.

PECK
v.
ELLIS.

[ * 131 ]       *PECK *against* C. ELLIS, impleaded with ELLIS and ROWLAND.

> Equity will not interpose to enforce a *contribution* between *wrong-doers;* especially where they do not stand in equal right, or there is not equal equity between them.

*April* 11th.

THE petition of the defendant *Caleb Ellis* stated, that, on the 20th *January,* 1815, it was decreed, in this suit, that the petitioner, and *Isaac Rowland,* defendant, should convey to the plaintiff, in fee, their right to an undivided moiety of a lot of land, mentioned in the plaintiff's bill, and that it be referred to a master to ascertain the value of the *saw logs* and *timber,* cut or carried away from the lot by the defendants, or either of them, and that the defendants should pay such value, with the costs of suit. That, on the 12th *August,* 1815, the master reported that the value of the logs and timber taken and carried away by *Rowland,* was 890 dollars and 75 cents, and the value of the other timber carried away was 75 dollars and 25 cents, amounting in the whole to 966 dollars. That this report was confirmed, and an execution issued in favor of the plaintiff, against *C. Ellis,* and *Rowland,* for that sum, with the costs, exceeding 400 dollars. That the execution was levied on the property of the petitioner, which was advertised for sale by the sheriff of *Saratoga,* on the 20th of *April,* 1816; that *Rowland* resided in the same county, and had sufficient property. That on the 17th *March,* 1816, *Rowland,* as the

104

plaintiff admitted, had paid him the amount of the execution, and that the plaintiff paid the same to *James Thompson*, Esq., for a debt, and also assigned over the execution to him. That this assignment, as the petitioner was informed, was made for the benefit of *Rowland*, and the *sheriff had been directed to collect the whole amount of the petitioner, though he ought not to be liable for more than his proportion of the costs of the suit, provided *Rowland* was able to pay the residue. The petitioner prayed for an order directing the sheriff to collect the whole 966 dollars out of the property of *Rowland*, and just proportion of the costs only from the petitioner, &c.

The affidavit of *Rowland* stated, that, on the 31st of *October*, 1808, he purchased of *C. Ellis*, 200 pine trees, for sawing, which stood on the lot mentioned, which contained 200 acres; that *Ellis* affirmed that one half of the lot belonged to him; that the price of the trees was 100 dollars, part of which sum had been paid. That *C. Ellis* showed *Rowland* where the trees were to be cut, none of which were removed before the 1st of *December*, 1808; and on that day *Rowland* purchased of *C. Ellis* his moiety of the lot, for 200 dollars, and *C. Ellis* gave him a deed accordingly, with warranty, and also a covenant to indemnify *Rowland* against what *C. Ellis* alleged to be an unfounded claim of his brother-in-law to the lot. The contract, which was produced, recited the purchase, and that *Peck*, the plaintiff, had threatened that if any person cut timber on the lot, or occupied, he would file a bill in chancery for an injunction; and thereupon *C. Ellis* covenanted, that he would indemnify *Rowland* against the said bill or injunction, and of and from all costs and charges arising in consequence thereof, and would defend the suit in chancery, at his own proper costs and charges; and that if the title proved bad, the bond given for the purchase money should be void, and any money paid thereon be refunded. That *Rowland*, by the agreement, was to have the 200 trees clear, on paying the price of the land; that after the purchase, he, *Rowland*, continued to cut trees from the land as owner; that *Thompson* held the assignment of the decree and execution, as trustee, for the benefit of *Rowland*, and in order to collect the money of *C. *Ellis*; that any money paid by *R.* to *T.* had no relation to the decree or the assignment. That *C. Ellis* had said to the sheriff that he had no property to satisfy the execution; and *Rowland* said, that if he paid any part of the damages or costs, under the decree, he was assured the money would be lost.

The *answers* of *C. Ellis*, and *J. Rowland*, to the bill of the plaintiff, were also read at the hearing of the petition. The former said he was ignorant of the purchase of the lot

by the plaintiff, except from vague reports. That the deed to him was executed without any knowledge of any claim of the plaintiff. That when he, afterwards, sold to *Rowland*, he informed him, that he had heard that the plaintiff had made some pretensions to the lot, but that he, *C. E.*, believed he had abandoned them.

*Woodworth*, for the petitioner.

*Henry*, contra.

THE CHANCELLOR. Though the present application be by petition, it is in the nature of a bill filed by one defendant against another, for contribution, or to have the damages in the execution equally apportioned and levied.

By the decree in the original suit against these parties, as co-defendants, they were made jointly responsible for the damages assessed for cutting timber, and the decree on that point appears to have been taken as of course, without objection. There was no question raised as to the joint responsibility of the defendants. The petition is, therefore, to be considered as presented in a case in which the defendants were equally and justly chargeable, as it respected the plaintiff, with the damages for taking his property wrongfully and under fraudulent pretences, without title. It is always immaterial, in such cases, as it regards the rights of the plaintiff, which of the defendants appropriated *to himself the greater part, or the whole of the emoluments of the trespass. Each is answerable for the entire damage.

The application proceeds upon the admission of this principle, and of the correctness of the decree, and it is made for an apportionment of the damages, between the defendants, *in respect to each other*, and on the ground that the timber was, in fact, taken and enjoyed exclusively by *Rowland*.

But it appears to me, that as well on the special circumstances of this case, as on general principles, the motion ought not to be granted.

1. *Rowland* purchased 200 pine trees for saw logs, of *C. Ellis*, in *October*, 1808, for 100 dollars, and paid him part of the money; and when he purchased the land, in *December* following, the residue of the purchase money due for the trees was, by agreement, merged in the price of the land. There is, then, independently of any other consideration, a just claim by *Rowland* upon *Ellis*, for indemnity against the decree, to the amount of the trees so purchased and paid for. But *Rowland* produces a covenant of indemnity given at the time of his purchase, and for the express purpose of meeting this anticipated claim of *Peck*. The covenant recites
106

that *Peck* had threatened that if any person should cut timber, or occupy the lot, he would file a bill in chancery, and obtain an injunction, and it then provides that *Ellis* will indemnify *Rowland* " from the said bill of injunction, and of and from all costs and charges arising in consequence thereof, and will defend the said suit in chancery at his own proper costs and charges." I cannot perceive any equitable claim that *Ellis* can have to the interference of this Court in his favor, as to the costs of the suit in this Court. They are expressly within his covenant of indemnity; and the claim of *Rowland* to indemnity under this covenant, for the damages assessed by the decree, for using the timber, appears to me to be strongly supported. The covenant seems to have been intended against the suit at large. *It was against " the bill or injunction." It was from " all charges arising in consequence thereof." It was " to defend the suit in chancery at his own costs and charges." *Rowland* was a purchaser for a full consideration. He had heard of the claim of *Peck*, and he was assured by *Ellis* that it was utterly groundless; but, for greater caution, he took not only a deed with a general warranty, but an express covenant of indemnity against any suit in chancery founded on that claim. *Rowland* intended to be saved harmless in the use and enjoyment of the land, and of this very timber. The covenant expressly anticipated a charge for the cutting of timber, and in the spirit, if not under the legal construction, of that instrument, he ought to be protected by *Ellis* from the damages awarded by that decree. It is, at least, a case so favorable for *Rowland*, that I do not think this Court ought to interfere specially, and direct an apportionment of the damages between the two defendants to be made, in levying the execution.

2. These are grounds peculiar to this case, and they are very much strengthened by general considerations applicable to every case of this kind; for the defendants are charged with the value of the timber in the character of joint trespassers taking the mesne profits.

*Caleb Ellis* purchased the land of *James Ellis* fraudulently, and with intent to defeat the prior equitable title of *Peck*. When he sold the land to *Rowland*, he was conscious of the fraud, and yet he assured *Rowland*, that the claim of *Peck* was unfounded and abandoned. *Rowland* was no party to the original fraud, and might not have believed it. *Ellis* was guilty of fraud, both as it respected *Peck* and *Rowland*. If both defendants were chargeable with fraud, as they undoubtedly were, yet there was all possible difference in the demerit of each, and in the nature and degree of the fraud imputable to both. The fraud in *Rowland* was legal, or constructive fraud; but in *Ellis* it was actual fraud, in the first

1816.

PECK
v.
ELLIS.

[ * 135 ]

1816.

PECK
v.
ELLIS.

instance, and, afterwards, in the *deception practised upon *Rowland,* by which he was led to purchase the land, and to use the timber as his own, when the right was in another. I doubt whether a Court of equity has ever aided one *tort-feasor* against another, in the apportionment of damages jointly assessed, even though they stood equal in wrong; but I am satisfied the Court has never interfered where the party seeking its aid is solely and deeply guilty, and was the cause of leading the other defendant to buy an unsound title. If any interference was proper, in this case, it would be to charge the damages exclusively upon *Ellis;* though where several persons are each strictly chargeable with damages, it might impair the just remedy of the injured party to limit the recovery to any one defendant.

Contribution is allowed only between defendants standing *in æquali jure.*

The principle of contribution is equality in bearing a common burden; but equality is not equity between two defendants who stand on such different ground. They must stand *in æquali jure,* or the rule does not apply. A Court of law will now sustain an action for contribution between two debtors or sureties, under an implied *assumpsit* arising from the knowledge and operation of the general principle that equality is equity. But a Court of law will not sustain an action between two joint trespassers. In *Merryweather* v. *Nixan,* (8 *Term Rep.* 186.) it was held, that if *A.* recover in tort against *B.* and *C.,* and levy the whole damages on one, that defendant cannot sue the other for contribution. I am not apprized of any decision in chancery to the contrary. In *Philips* v. *Biggs,* (*Hard.* 164.) a bill was filed by one of the sheriffs of *Middlesex* against the other, for contribution, in a case where the damages had been levied on one for an escape suffered by both, and the Court of Exchequer considered it a case of the first impression, and doubted, and no decision appears to have been made. But in the late case of *Lingard* v. *Bromley,* (1 *Ves. & Beame,* 117.) *the master of the rolls* observed, that where entire damages are recovered against *several defendants for a tort, a Court of justice will not interfere to enforce contribution among the wrong-doers. In *Deering* v. *Earl of Winchelsea,* in the exchequer, (2 *B. & Puller,* 270.) Lord Ch. B. *Eyre* gave a very able opinion on this subject. He seemed to admit, that if one defendant was the author of the loss for which contribution was claimed, he was not entitled to any, because it was the maxim that a man must come into equity, *in respect to such a demand,* "with clean hands." He placed the whole doctrine of contribution on the ground that the parties were in equal right, and had equality of equity in respect to the burthen. But the present case is not within the reach of this doctrine; for the original purchase of the 200 trees, and the subsequent

There is no contribution between joint trespassers at law,

nor, it seems, in equity.

[ *137 ]

covenant of indemnity against the suit, and the actual fraud
of the one defendant, which was the cause of the decree, are
facts which destroy the pretence of any equality of equity be-
tween the defendants, and show that the whole charge ought,
in justice, to rest on the petitioner.  There are many cases
in which persons may be all liable to a third party, and yet
ought not, in equity, to bear the burthen equally among
themselves.  (1 *Ves. & Beame*, 117.)

1816.

PECK
v.
ELLIS.

The civil law, like the decision in the K. B. which I have
cited, would not allow any action for contribution between
defendants condemned in damages for a joint offence, or
cause of action arising *ex delicto*.  The defendant on whom
the whole was levied had no remedy over.  The law would
not recognize any of the rights or obligations of copartner-
ship in an association for mischief.  *Si ex dolo communi con-
ventus præstiterit tutor, neque mandandæ sunt actiones, neque
utilis competit : quia proprii delicti pœnam subit : quæ res in-
dignum eum fecit, ut à cæteris quid consequatur doli partici-
bus : nec enim ulla societas maleficiorum, vel communicatio
justa damni ex maleficio.  (Dig. 27. 3. 1. 14.)  Nec societas,
aut mandatum flagitiosæ rei, ullas vires habet.  (Dig. 18. 1.
35. 2.)*  But *Pothier *(Trait. des Obl. No. 282.)* considers
these as rather scrupulous principles of the *Roman* lawyers,
and says, that the *French* law is more indulgent, and gives
an action to one co-trespasser who has paid the whole debt,
and he puts it on the same principle as a contribution be-
tween co-sureties.  I doubt much of the wisdom of this in-
dulgence.  ·Public policy speaks loudly against it.  There
would be no safety to property if a large combination of
trespassers were entitled to the assistance of Courts of justice
in the apportionment of the damage.  The knowledge
that each individual is responsible for the whole, constitutes
the great check. (*a*)  Where the contribution is asked for
between parties jointly convicted of fraud, I should then,
at least, prefer the doctrine of the civil law, and the sanction
it has received from the stern, unaccommodating morality
of Lord *Kenyon*.  It appears to me more congenial with the
spirit and genius of a Court of equity, not to lend an encour-
aging aid to parties, to apportion between them, by a nice
and calculating hand, the penalty of their injustice.  But
it is evident that the rule even of the *French* law applies
only to the case of two defendants charged with a common
debt arising *ex delicto*, and standing *equal* in the transaction

[ * 138 ]

(*a*) *Evans*, in his notes to a translation of the treatise of *Pothier*, gives a
preference to the *French* law on this point, and considers the *Roman* jurists
as over scrupulous; but he seems not to advert to the *policy* of the rule of
the *Roman* and *English* law.  (2 *Evans's Poth.* 80.)

109

1816.

FERGUSON
v.
SMITH.

in relation to each other.   On no other possible ground can the equity of contribution arise.

In every view, therefore, which I have taken of this case, I am of opinion that the motion ought to be denied.

Petition refused.

[ * 139 ]                    *FERGUSON *against* SMITH and others.

The service of a *subpœna* on the husband alone is good against both husband and wife, and he must answer for both; but if the plaintiff seeks relief out of the separate estate of the wife, the service must be also on her, and she may put in her separate answer.

*April* 23d.

MOTION by *Garr*, for the defendant *Juliana Smith*, to set aside a decretal order for the sale of mortgaged premises, and under which a sale had been made, but no conveyance executed.   The affidavit stated, that subsequent to the giving of the mortgage to *Marks*, the premises had been conveyed to her with the assent of her husband, and that the equity of redemption was in her; that she had not been served with a *subpœna* to appear, and that her husband had now absconded and left her, and that she was willing to redeem the premises by paying off the mortgage debt, and bringing the money into Court.

*J. Strong*, contra, showed by affidavit, that the process was served on the husband, and that it was understood, and so charged in the bill, that the deed from *Marks* was taken in the wife's name, to secure the property from her husband's creditors, and that the purchase money was paid out of his property.

THE CHANCELLOR.   The general rule is, that the service of a *subpœna* against husband and wife on the husband alone, is a good service on both, and the reason is, that the husband and wife are one person in law, and the husband is bound to answer for both.   (*Wyatt's Pr. Reg.* 402, 403. *Gilbert's For. Rom.* 41, 42.   1 *Harris. Ch. Practice*, 207.)   But where the plaintiff is seeking relief out of the separate estate of the wife, it has been deemed necessary, in a late case, (9 *Vesey*,
110