[PHILADELPHIA, MARCH 31, 1831.]

WECKERLY *against* The Ministers, Vestry-men, and Church-wardens of the German LUTHERAN CONGREGATION in and near the city of Philadelphia, in the state of Pennsylvania.

3 R  172
20 SC ²330

An action cannot be maintained against a corporation, by one, who, by their appoint-ment, has acted as a judge and inspector of a corporation election, to recover indemnity for the amount of damages and costs, previously recovered against him by a corpora-tor, for having *fraudulently* and *maliciously* refused his vote when offered; whether a promise of indemnity be considered as having been made before the election, or after it has taken place, and the plaintiff been sued or threatened with a suit by the aggrieved corporator.

And the record of the suit brought against the plaintiff, by such corporator, is conclusive evidence, that the vote was *fraudulently* and *maliciously* rejected when offered.

THE plaintiff in this case having obtained against the defendants a verdict for two thousand five hundred and fifty dollars, a rule was granted, on behalf of the latter, for a new trial, which was argued by *J. Randall* in support of the rule, and by *J. R. Ingersoll* against it.

The opinion of the court, which embraces all that is material in the case, was delivered by

KENNEDY, J.—This is an action on the case, and was brought by the plaintiff against the defendants, to recover and be indemnified for the amount of damages and costs which were recovered from him in three actions brought against him severally by *Andrew Geyer, H. Burkhardt,* and *P. Lex,* for having *fraudulently* and *maliciously* re-fused to receive their respective votes at an election held by the mem-bers of the German Lutheran Congregations of *St. Michael's* and *Zion's* churches, on the 29th day of *October,* 1821, the plaintiff being one of the judges and inspectors of the election, and for other charges which he had to pay on account of his defence *in* these ac-tions.

The plaintiff has filed a declaration in this case in *assumpsit,* con-taining four counts: The first three for money paid, laid out, and expended—money lent and advanced—money had and received, and the last upon an account stated.

The case was tried at *Nisi Prius,* in *Philadelphia,* in *December,* 1830, and a verdict given in favour of the plaintiff for two thousand five hundred and fifty dollars and six *cents* damages. The defend-ants, on motion, obtained a rule of this court on the plaintiff, to show cause why a new trial should not be granted, for the reasons filed by their counsel.

It is unnecessary to notice and express an opinion upon all the reasons assigned for a new trial; inasmuch as a majority of the court are satisfied that the plaintiff, from his own showing, cannot main-tain this action. The second and fifth reasons, having reference to

(Weckerly *v.* Lutheran Congregation.)

the ground upon which the plaintiff claims to sustain it, will therefore only be considered.

The plaintiff professes to found his claim upon an undertaking and promise of the defendants, which he alleges was made, to indemnify him, for and on account of what he did as a judge and inspector of their election, in rejecting the votes of *A. Geyer, H. Burkhardt* and *P. Lex.* The plaintiff, in order to maintain his action, first gave in evidence the records of the several actions brought against him by *Geyer, Burkhardt* and *Lex,* in each of which it appears that he is charged with having *fraudulently* and *maliciously* refused to receive the vote of the plaintiff therein; and the record further shows that this charge was upon the trial proved to be true, and that a verdict and judgment passed against him in each case, for damages and costs, which he seeks to have reimbursed by this suit.

That recoveries were had against the plaintiff in these actions, and that the amount thereof, together with the moneys expended by him in defending the same, have not been paid and reimbursed to him by the defendants, form the basis of his complaint in this suit. He alleges that the defendants undertook to indemnify and save him harmless against those suits; of which undertaking, if he gave any evidence, it was but very slight indeed. Without, however, being able to establish such an undertaking, he does not pretend that he could sustain his action. To allow the plaintiff, then, the utmost latitude of range that he can possibly claim for supporting this action, I shall consider, first, the effect of an executory contract, supposing it to have been made previously to the election, and having for its consideration the mutual promises of the parties: That is, that the plaintiff agreed to be an inspector and judge of the election, and that he would *fraudulently* and *maliciously* reject the votes of *Geyer, Burkhardt* and *Lex,* if offered, and that the defendants, in consideration thereof, agreed and promised the plaintiff to keep him indemnified, and to bear him harmless. In the next place, I will consider the effect of a promise or undertaking on the part of the defendants, supposing it to have been made after the election had taken place, and after that the plaintiff had been sued or threatened with these suits, by *Geyer, Burkhardt* and *Lex,* and having for its consideration that which had already past, and been transacted, *to wit,* that in consideration that the plaintiff had, at the request of the defendants, and under their appointment, acted as judge and inspector of the election, and in doing so, had rejected the votes of *Geyer, Burkhardt* and *Lex,* in conformity to their wishes, which met their entire approbation, and, as suits were instituted by these several persons against the plaintiff, that they, the defendants, agreed and promised to indemnify, and bear him harmless.

As to the first point of view in which it has been mentioned, to consider the plaintiff's cause of action, it is obvious that the act agreed to be done by him, or the course that he agreed he would pursue, which forms the consideration for the promise of indemnity,

*(Weckerly v. Lutheran Congregation.)*

is of a highly criminal nature, and prohibited by law. It was, that he, being appointed a judge and inspector of the election, would *fraudulently* and *maliciously* reject the votes, if offered, of *Geyer*, *Burkhardt* and *Lex*, each of whom was entitled to vote. For if the plaintiff does not claim that the defendants agreed to indemnify him for *fraudulently* and *maliciously* refusing to receive the votes of these persons, but merely that they agreed to indemnify and save him harmless, for acting as an inspector and judge of the election, then these recoveries of damages and costs in the suits by *Geyer* and others, can furnish no ground or claim whatever against the defendants, because they were had expressly on the principle that the plaintiff acted *fraudulently* and *maliciously*, and not because he acted as a judge and inspector of the election, and in doing so, rejected the votes.

If the promise was not to indemnify the plaintiff for acting thus *fraudulently* and *maliciously*, but for acting uprightly, and according to the best of his judgment, it is clear that such a promise cannot be extended to embrace and protect against these recoveries. But if the promise of indemnity is made to provide against these recoveries, it amounts to this, that the defendants agreed to indemnify the plaintiff against his own *fraudulent* and *malicious* conduct. The common law, however, prohibits every thing which is unjust or *contra bonos mores*, or against its policy in any respect, or against the provisions of the statute, or the rules and claims of delicacy.

Therefore a contract or agreement, which is made in contravention of these general principles, is void; for instance, if the defendant, in consideration of twenty shillings paid to him by the plaintiff, promise that he will pay the plaintiff forty shillings if he does not beat *J. S.* out of such a close; this is illegal and void, 2 *Lev.* 174. So if the defendant request the plaintiff to beat another, and promise to save him harmless; this is a void consideration, for the act is unlawful, *Hutt.* 56.

An agreement by the plaintiff to fight, or a licence given by him to the defendant to beat him, will not prevent him from recovering damages for the injury done by the beating, upon the principle of *volunti non fit injuria:* because fighting is unlawful, and to strike or beat another with or without his consent is a breach of the peace. *Bul. Ni. Pri.* 16. *Comb.* 218. So if a condition of an obligation be to do a thing, which is *malum in se*, the condition and obligation are both void; as if an obligation be with condition to kill another, *Co. Lit. b.* 266, or to maintain and use such a one as his wife, who is the wife of another. *Mo.* 477. *Com. Dig.* tit. *Cond.* (*D.*) 71. So if the condition be to enlarge out of prison, or suffer his escape. *Hob.* 14. *Hard.* 464. See also *Cowper*, 343.

A court of law will sustain an action for contribution between two debtors or sureties, under an implied assumpsit, arising from the knowledge and operation of the general principle, that equality is equity,

(Weckerly *v.* Lutheran Congregation.)

but not between two joint trespassers. 2 *Johns. Ch.* 136. *Coventry* v. *Barton,* 17 *Johns. Rep.* 142.

Neither will equity interpose to compel contribution or to grant relief, as between joint tort-feasors. For *ex turpi contractu actio non oritur,* is a rule both in law and equity. 1 *Fonb. on Equi.* book 1, c. 4, s. 4, note *y.* There is, however, a distinction between promises of indemnity which are, and those which are not void. If the act directed or agreed to be done, is known to be wrong, an express promise to indemnify would be illegal and void; but if it was not known at the time to be wrong, the promise of indemnity would be good and binding. *Coventry* v. *Barton,* 17 *Johns. Rep.* 144. *Cowp.* 343. *Winch.* 49. *Bul. N. P.* 146. *Com. on Con.* 31. 2 *Johns. Ca.* 54.

Public policy seems to justify and vindicate these principles.— What security would men have for their property, or for those rights of still infinitely more value which belong to their *persons,* if it were known that each of all those who combine for the purpose of trespassing upon such rights is entitled to claim the interposition of courts of justice to compel his aiders, abettors, and promisers of indemnification, to reimburse him their proportional part of the damages, which he had been compelled to pay, in order to compensate the party injured.

That a joint-wrong-doer, or he who knowingly violates the right of another, at the instance of a third person, and upon the faith of his promise of indemnity, cannot have contribution or indemnification, operates as a salutary check against the commission of wrongs. It cannot be pretended that the plaintiff could have been guilty of the conduct imputed to him by *Geyer,* and others, in their actions against him, without his being conscious, and knowing at the time, that it was wrong; the very nature of the act itself precludes all idea of the kind. Ignorance therefore forms no excuse for him.

I will now examine the case, supposing the promises of indemnity to have been made upon a past consideration, as stated in the second view intended to be taken of the subject.

The plaintiff's counsel has contended that the plaintiff was as it were the agent of the corporation, or the defendants, acting under their authority, and although prompted to do that which was wrong, yet the promise of the corporation, or the defendants, afterwards to indemnify him against all the consequences, ought to be considered binding, and a protection to the plaintiff who had, as he alleges, no individual interest in the matter. That a past transaction, although illegal, may be a good consideration for a contract, in certain cases, must be admitted. As in the case of the Marquis of *Annandale,* who having seduced *Ann Harris,* had a child by her, and afterwards gave her his bond for the payment of a sum of money, which was held good. 2 *P. Wms.* 432. The same principle was also decided in *Turner* v. *Vaughan,* 2 *Wils.* 339. These cases may be considered as forming a class, perhaps, rather of a peculiar character: and in re-

(Weckerly *v.* Lutheran Congregation.)

gard to them it must be admitted that a distinction has been taken between the past immoral and illegal conduct or acts of the party, being made the consideration of a contract, and that which is of an immoral and illegal nature, but agreed to be done in future.

It has already been abundantly shown, that every contract resting upon such a basis for its support, as an immoral or illegal act agreed to be done in future, where the party agreeing to do it, at the same time knows it to be wrong, is without any exception void, and cannot be enforced either at law or in equity. That there has been a strong leaning on the part of both courts of law and equity to relieve innocent and seduced females from the operation of the general principle of law, as applicable to wrong-doers, cannot, I think, be doubted. And it may be right to do so; when we consider the ascendency a man may obtain over an innocent female, who is made to believe, that she is the sole object of his undivided love and affection, and that in most cases they are made to believe all this for the purpose of effecting their ruin forever. Again when we reflect, that the man in such case is almost uniformly the aggressor, and the female the only sufferer, it needs not be wondered at, that such cases have been brought to be judged of by a rule, perhaps, peculiar to themselves.

Indeed, it has been regretted by some, that the law did not give a right of action to the female directly in such a case against her seducer, in order to be redressed in some measure for the injury done to her. This, however, cannot be as long as the law considers her *particeps criminis,* (though certainly not so in equal degrees,) and as long as the rule is *volunti non fit injuria.* As evidence of the feelings of our courts and juries, and of what may now be considered the law in these cases, very slight circumstances are laid hold of, such as afford at most but a mere colourable pretext for sustaining actions against the seducers, for the recovery of damages, which when obtained are generally given by the plaintiff in these actions to the parties *really* injured. Thus the law gives a right *to the* parent or other person, with whom the female happens to be living at the time, even where she is of full age, and for whom it can be proved, she has done some very slight service; the least imaginable will be sufficient, whether done under a contract or not, to maintain an action against the seducer, upon the idea or notion, that the plaintiff has thereby lost the benefit of her service, although he may have had no right whatever to claim it. The value of the service lost is never made the measure of the damages recovered in such cases.

The good character and standing of the female previously to such connection, as also that of her family and relatives, are all taken into consideration by the jury; as also the painful feelings and distress of mind, which it may be reasonably presumed, they suffered by reason of the same: and with a view to make reparation for all these things as well as to *punish* the defendant, who has not only been the cause of blasting for ever the reputation, and prospects of an amiable female, but of breaking up and destroying the peace of an innocent

(Weckerly *v.* Lutheran Congregation.)

and respectable family, the jury with the entire approbation of the court, has given a verdict against the defendant for thousands of dollars, where the damages actually sustained by *loss of service*, could have been nothing more than nominal or ideal.

It will be difficult, I apprehend, to bring the plaintiff's case here within the principle of this class. We might indeed suppose a case, which would bear perhaps some analogy to the one, upon which the plaintiff here asserts his right to recover, if it were possible to conceive such a thing of the defendants as a corporation; that the plaintiff had under the advice of the defendants seduced and debauched an innocent young female; that upon suit being brought against him by her father to recover damages *per quod servitium amisit*, the defendants had promised to indemnify the plaintiff, who was afterwards compelled to pay to the father heavy damages.

If this were the plaintiff's case, can it be imagined, that he would be entitled to recover? I think not. The damages which he had been made to pay, as to him, could be considered only a just punishment for his offence. It would be no excuse for, or even palliation of his conduct, that he was advised to do so by the defendant. And why should he be relieved from the punishment, which the law had so justly inflicted upon him? It would, as it appears to me, be contrary to every principle of sound policy as well as of natural justice.

The plaintiff cannot be considered in this transaction, as his counsel has contended, as having acted in the character of an agent to the defendants. The office of an inspector and judge of the election, was created by law, and although the plaintiff was appointed to that office by the defendants as a corporation, he as soon as appointed became the officer of the law, and the course which he was to pursue, as well as the duties or acts, which he was to perform, were all prescribed by law.

It was therefore the law, that he was bound to regard and obey. He was subject in no respect to the defendants, as an agent is to his principal. The office of a judge and inspector of an election is certainly of great responsibility.

It is of the utmost importance to the public, that its duties should be performed with the strictest integrity. It is said and admitted, that the plaintiff was not of the vestry or church wardens of the corporation, and as such could have felt no particular concern in the election.

Nor can it be perceived, why the corporation should have had a desire, that the plaintiff should have done what he did. Some of its members might have wished it, but we must not mistake the individual members for the corporation.

But then since the plaintiff was not one of the trustees or officers of the corporation, can any motive be imagined, that will afford the least palliation for his conduct, when acting as the judge and inspector of the election, in *fraudulently* and *maliciously* refusing to receive

(Weekerly v. Lutheran Congregation.)

the votes of those who were entitled to vote. To the honour and credit of the state, it is the only and first instance of the kind, I believe, that has occurred and come under judicial notice. Yet shall it be said, that conduct so highly criminal and injurious to the public without any motive that can be conceived, other than those of the most base and dishonourable cast, shall form a good and legal consideration for a subsequent promise?

The defendants, as in the case of a seducer, cannot be said to have done any act, by which the plaintiff has sustained an injury either in pocket or reputation. His conduct which occasioned the suits and recoveries against him, was of his own will and malice, and for which he and he alone ought to be responsible, and the damages recovered against him must have been given as due to his offence, rather than to the plaintiffs for any actual loss or injury sustained by them.

It is out of the question to say, that the defendants who are sued here as a corporation could in that capacity be said to have advised or requested him to act as he did, merely because he was appointed by them the inspector of the election. When appointed he became as has been already observed, the officer of the law, and any wish or desire they might have had, cannot be conisdered as accompanying the appointment, or connected with it in any way. Upon what principle of consistency and reason can the corporation be connected with the plaintiff in this transaction, and made to reimburse him the monies which were justly recovered by individual corporators of the same corporation, and to pay him out of the corporation funds, which partly belong to those persons who recovered from him? This would in effect be to make them refund part at least of the money so recovered, which would be an act of injustice towards them, as well as towards all the other corporators, who did not approve of the conduct of the plaintiff. The defendants as a corporation have done no injury to the plaintiff, nor does it appear, that they did or advised any act to be done, whereby loss, damage, or injury has arisen to the plaintiff: nor have they derived any benefit or advantage from his act or conduct: and if so, there can be no consideration to support the promise of indemnity, which the plaintiff pretends was made by the defendants.

It does not appear to me, that the defendants ever were under any obligation, either legal, moral or equitable to indemnify the plaintiff, or that they ever requested the plaintiff to do as he did, without one or other of which there is no colour of consideration to support a promise.

But it is further contended by the plaintiff's counsel, that although it was alleged against the plaintiff in the suits brought against him by *Guyer, Burkhardt* and *Lex*, that he *fraudulently* and *maliciously* rejected their votes when offered, and that such conduct, if true, may not be considered as a good consideration for the promise of indemnity, yet that the finding of the juries in those cases, that he did *fraudulently* and *maliciously* reject their votes, was not conclusive

(Weckerly *v.* Lutheran Congregation.)

evidence of the fact against him on the trial of this cause, because not between the same parties. The learned judge, before whom this cause was tried at *Nisi Prius,* inclined to be of this opinion, and directed the jury that the records of those suits as between the parties to this action, were not conclusive evidence, that the plaintiff had acted *fraudulently* and *maliciously* as therein charged. To this proposition I cannot yield my assent.

It is true as a general rule, that a record of a suit and judgment is evidence only between the same parties and privies thereto, and conclusive upon no others. It is, however, but a general rule, and of course admits of exceptions. The vendor, who guarranties the title of the property sold to his vendee, in case of a suit brought against the vendee, of which he immediately gives notice to his vendor, and afterwards a recovery of the property is had against the vendee upon a better and older title, is bound by this decision, although not a party on the record to the suit; and will not be permitted to gainsay or question the correctness of it in an action brought by his vendee against him upon his guarranty.

So in the case of an action of ejectment brought against the tenant of a third person, of which notice is given to the landlord, who does not become a party to the suit, and a recovery is had against the tenant, who is turned out of possession, and afterwards by suit of which the landlord had like notice, is compelled to pay to the plaintiff in the ejectment the mesne profits of the land recovered; the landlord in an action brought against him by the tenant to recover and be indemnified for the mesne profits and costs which he was compelled to pay, will not be permitted to allege or prove that either the recovery in the action of ejectment, or for the mesne profits, was wrong. He is concluded by the record in each of these cases, although not a party to them. I consider these cases exceptions to the general rule, because the vendor in the first case, and the landlord in the last, after notice of the suits being brought, would have been admitted to defend, if they had wished it, and thus being entitled to claim all the benefits of a party to the suit, they are bound and concluded by the decision of the jury and court in the same. See *Jackson* v. *Marsh,* 5 *Wend.* 46. *Leather* v. *Poultney,* 4 *Binn.* 356. *Bender* v. *Fromberger,* 4 *Dall.* 436, *in note. Kip* v. *Brigham,* 7 *Johns. Rep.* 168. *Waldo* v. *Long,* 7 *Johns. Rep.* 173. *Bond* v. *Ward,* 1 *Nott and M'Cord,* 201. *Tyler* v. *Ulmer,* 12 *Mass.* 166. See also *Stone* v. *Hocker,* 9 *Cowan,* 154, and *Hamilton* v. *Cutts,* 4 *Mass. Rep.* 349, from which the same principle is deducible.

The plaintiff here alleges, that the defendants were connected with the suit brought against him by *Guyer, Burkhardt* and *Lex,* through their promise of indemnity to him, and certainly without this connection the plaintiff could not pretend, that he had the least colour of cause of action; and being so connected according to the allegation of the plaintiff himself, this upon the principle and authority of the

cases referred to, would make the records of those suits conclusive, not only upon the plaintiff, but upon the defendants, if they had notice in due time of those suits being brought, so as to afford them a full opportunity of making any defence that might exist. That they had such notice was shown by a resolution passed by them as a corporation on the 30th of *November*, 1821, and read in evidence by the plaintiff from the book kept by the defendants for the purpose of registering their proceedings in it as a corporation.

There is also another principle, upon which I consider the records of these suits conclusive evidence of the justness and correctness of the recoveries therein had against him. It appears to me that whenever a plaintiff introduces and makes the record of an action, and a recovery therein against himself, the foundation of his suit or basis of his claim in an action brought by him afterwards against a third person, he is not at liberty to deny the principle, upon which it appears from the face of the record itself, that the action was decided, and the recovery had against him, or in other words to prove, that the recovery was wrong. Neither can I conceive how it could avail him to be permitted to make such proof, as will be seen in the sequel. It is said, that the plaintiff produced and gave in evidence these records to show the amount of the recoveries against him; which he claimed to have of the defendants; but surely it was quite as necessary, that he should also prove and show the *cause*, for which their recoveries were had, for without that being done, it would be impossible to connect these defendants in any way with those recoveries. And how could that be legally done, but by the record, or a duly certified copy thereof, where the cause of action appears to be fully set forth and spread upon it.

It would be the very best evidence that the nature of things would admit of; and where a record and that alone, or a duly authenticated copy thereof must be given in evidence to prove a certain fact, I apprehend, it cannot be contradicted or set aside except for and on account of fraud practised in its concoction.

The principle which I have just laid down, is fully recognized and set forth by Chief Justice Spencer in *Marquand* v. *Webb*, 16 *Johns. Rep.* 93, where the action was for repairs done to a vessel against one part owner, who neglected to plead the non-joinder of the others in abatement, and one of them was offered on the part of the plaintiff as a witness to prove, that the defendant was an owner of the vessel, but held not admissible. Upon this question the chief justice, in delivering the opinion of the court, says, "He (meaning the witness) was undoubtedly interested to render the burthen upon himself as light as possible, and to throw it on the defendant in part. It is true the witness was liable to contribution, but the *defendant* could *never controvert* afterwards with the *witness* in case he sued him for contribution, that he (the defendant) was not a part owner of the vessel. He could *not* take the ground, that a verdict had been recovered against him by the present plaintiffs *wrongfully*. The *very*

(Weckerly *v.* Lutheran Congregation.)

*basis* of a suit to be brought by him for contribution must be, that he was a part owner. Upon any other principle he would be remediless. The recovery in this case would be evidence of the amount he was compelled to pay." Connected with this part of the case there is also another principle established in relation to the evidence given by a party, which is, that it is not competent for him to insist upon the effect of one part of the paper constituting his own evidence, without giving the other party the benefit of the other facts contained in the same paper. *Greenleaf* v. *Birth*, 5 *Peters' Rep.* 138.

But even if it were not so, and the judge was correct in his opinion as to this point, I am still at a loss to perceive how the plaintiff is to improve and make good his claim in this action against the defendants, by proving that he did not act *fraudulently* and *maliciously* as a judge and inspector of the election as set forth in the records of those suits: for if he acted uprightly, and the recoveries against him were wrong, then he has no claim to indemnity of the defendants, because it must be intended, that this promise of indemnity, if any were given, was given against such a recovery or recoveries as should be right and just, and not against those, which the plaintiff in contradiction of the records, is pleased to allege, are unjust and wrong. Nor can it be supposed for a moment that a promise of indemnity was given, or even, that it could have entered into the heads of the defendants to think of giving, or that of the plaintiff to dream of asking for a promise of indemnity for and on account of his acting in the office of inspector of the election, and performing the duties of it with honesty and perfect integrity; because both parties must have been aware and well assured, that such conduct required no indemnity, and would furnish no possible cause of action, or just ground of complaint from any quarter. Upon the whole then it comes to this, that if the plaintiff did not reject the votes *fraudulently* and *maliciously*, but honestly and accordingly to the best of his judgment, there is no promise or engagement of the defendants to meet and relieve him from these unjust recoveries; but if he rejected them *fraudulently* and *maliciously*, as it was found against him in those suits that he did, then the illegality of consideration for the promise of indemnity returns to meet and oppose his claim with full force. I also think, the plaintiff cannot recover of the defendants in this action, who are sued as a corporation, because they as such had no power or authority to make such a promise of indemnity, as that under which the plaintiff claims to recover. It would have been a misapplication and waste of the funds of the corporation.

The minister, vestry-men and church-wardens of the German Lutheran church, were mere trustees for the congregation and corporators, and had no power or authority over either the congregation or its funds, other than that which is given by the act of incorporation. They are expressly restrained by the 6th section of their charter, from *Thomas* and *Richard Penn*, in the use and appropria-

tion which shall be made of the funds and estate belonging to the corporation.

This section declares, that they shall be applied to " the maintenance and support of the rector, ministers, and officers duly settled, and officiating in the said Lutheran Congregation, putting in good order and keeping in repair the burying ground, school and parsonage houses and other houses, which did then or thereafter shall belong to the said congregation, and for supporting, repairing or rebuilding the said *St. Michael's Church*, and erecting and supporting one church more within the said city of *Philadelphia*, or liberties thereof, for the better accommodating the said congregation, and *that they shall not be appropriated to any other purpose whatsoever.*"

Without a direct violation of this section in the charter, it appears to me to be impossible for the corporation to make a promise of indemnity to the plaintiff, that would call forth the funds of the corporation to reimburse him the amount of the damages and costs recovered from him by *Guyer*, *Burkhardt* and *Lex*, together with the monies expended by him in defending against the same.

It cannot be pretended, that the existence, well-being or interests of the corporation were involved in any way in these suits against the plaintiff. No question could properly have been raised or presented, and have been decided on, that would or could have affected their rights. If so, there could have been no colour for the corporation interposing and giving to the plaintiff a promise of indemnity. It had no power or authority, and therefore could not do it. Unless it can be shown, that such a power was delegated to it, or was proper to be exercised for the purpose of carrying into effect the design and object, for which the incorporation was created, the promise of indemnity, if ever made, must be considered void for want of authority as against the corporation. Nothing of the kind has been, nor do 1 believe, that it can be shown. See 2 *Cowan*, 664. 678. *Head* v. *The Providence Ins. Co.* 2 *Cranch*, 127. 166. 4 *Burr.* 2204. 7, 8.

I think, that the plaintiff has no right to recover of the defendants under any view that can be taken of his claim.

The rule to show cause why a new trial should not be granted, is therefore made absolute.

Rule absolute.