## AYER *v.* TILTON.

## AYER *v.* MOONEY.

One of several co-sureties on a promissory note represented to the defendants, two of the sureties, that he himself was a principal, and pledged to the defendant, Tilton, certain promissory notes, and among them the note of the plaintiff, who also was a surety, as security for Tilton's liability, and at the same time informed Mooney that he also was secured by this pledge. The plaintiff, who was another surety, afterward paid the whole debt, and relying upon the principal to repay him, sent the note so paid by his father, who made the pledge, and with a knowledge of such pledge directed him to allow the defendants to take their names from the note. This was done, with the understanding of the plaintiff and his father and the defendants, that the note was thereby destroyed, and the defendants' liability upon it ended ; and thereupon Tilton surrendered to the father the notes so pledged. Afterward the plaintiff, failing to obtain payment of the principal, after notice and demand, brought these suits for contribution :—

*Held,* that the plaintiff having, by his own acts, lulled the defendants into security, and caused them to give up the notes so pledged, was now estopped from setting up any claim for contribution against either defendant.

ASSUMPSIT, for contribution for money paid by the plaintiff, Francis R. Ayer, upon a note signed by all the parties, with others, the plaintiff claiming that he was

surety upon said note, and that the defendants in the actions were, as between themselves, co-sureties with the plaintiff. Plea, the general issue. The actions were tried by the court, and the following facts found:

On the 25th day of October, 1856, the following note was made:

"For value received we severally and jointly promise to pay Caroline B. Taylor, or order, one thousand dollars, in one year from date.          October 25, 1856.

Otis Ayer, F. B. Ayer, John Ayer, David Tilton, surety."

And upon the back of said note were the following names:

"Washington Mooney, Benoni G. Kelley, Samuel Shaw."

All the names, both upon the face and back of the note, were placed there on or about the day and date of the note, and before the same was ever passed into the hands of the payee, or the money loaned upon it. Tilton, Mooney, Kelley and Shaw, signed the note at the request of Otis Ayer. F. B. Ayer, this plaintiff, was the brother of Otis Ayer, and they were both sons of John Ayer. Otis Ayer had all the money for which the note was given, and was, in fact, the principal upon said note; and his father and the plaintiff brother were sureties for him. Otis Ayer, after obtaining this money, removed to the west, where he has since resided and still resides; and the note, not being paid when it became due, was sued, and service was made upon all the signers upon the note, about the first of November, 1857; and John Ayer thereupon gave to Tilton security, by turning out to him certain notes as collateral, among which was one signed by the plaintiff for $500, payable to John Ayer, &c., "all to be held by Tilton till said note, signed by Tilton as surety, shall be paid by the principals, and Tilton saved harmless of all loss, costs, trouble and expense in consequence of signing

the same." This plaintiff knew nothing of this security being given by his father, at the time it was given. It appeared that John Ayer had represented himself to Tilton, at the time of giving him this security, as a principal upon the said note, and that he did the same thing afterward to Mooney and the other signers on the back of the note, and informed them that he had put abundant security into Tilton's hands to secure them all against any liability upon said note; but it did not appear that the plaintiff had any knowledge or notice of that fact. The plaintiff, on the 18th day of January, 1858, wished to get up his note payable to his father, which had been assigned to Tilton as above described, in order to dispose of some property mortgaged to secure it, and he carried another note to his father, to exchange for it, which note they together carried to Tilton, and he exchanged and took this last mentioned note, and gave up the plaintiff's said note which he held, and gave John Ayer a receipt for this last note in lieu of the other. The plaintiff knew that his father had given Tilton this security at that time, and for what, and assented to it, as far as the above acts show any assent; but it did not appear that he knew the precise terms on which the security was given as specified in the receipt from Tilton to John Ayer. There was no consideration for the assignment of these notes by John Ayer to Tilton, except the fact of his signing the said note as surety, and the aforesaid representations of John Ayer. The plaintiff afterward took up the note signed by all these parties and others, and given to Miss Taylor, and paid it in full; and thinking that his brother, Otis Ayer, would pay him the money thus paid out, he sent the note to his father, John Ayer, at John's request, who carried the note to Tilton, and allowed him to cut out his name from the note, whereupon Tilton gave up to said John Ayer all the notes he held as collateral security, and received from John Ayer the receipt he had given for

the same; and it appeared that when the plaintiff sent the note to John Ayer, he directed him to let Tilton take his name from it, though nothing was said about getting up the securities; and when the note was returned to the plaintiff he erased his father's name from it, as he was old, and had been much troubled in consequence of this note and the suit upon it. The plaintiff and John Ayer and Tilton and Mooney all supposed, at the time, that the cutting and erasing the names from said note destroyed the note and ended their liability upon it; but after sending to Minnesota, to Otis Ayer, and his refusal to pay the note, or any part thereof, this plaintiff notified Tilton, Mooney, Kelley and Shaw that he should claim of them contributions toward the money he had paid upon this note, and afterward commenced suits against each of them, which are still pending. It appeared that John Ayer, Tilton, Mooney and Kelley were responsible, but that said Shaw owned and occupied a homestead of the value of $500, and no more, and had a cow, and some little personal property, but not more than enough to pay his other debts, without paying any part of this claim, and that the attachment in the suit against him by the plaintiff was merely nominal.

Upon the foregoing facts, the court held, as a conclusion of law, that the plaintiff was entitled to recover of the said Tilton and the said Mooney, each, one fifth part of the whole amount paid by him on said note to Caroline B. Taylor.

*G. Y. Sawyer*, for the plaintiff.

1. The fact that F. B. Ayer signed without the designation of "surety" is immaterial. No presumption arises from this fact that he was principal. *Whitehouse* v. *Hanson*, *ante*. The defendants, signing at the request of Otis Ayer, did so upon his security, unless some other party should, in fact, turn out to be the principal. If they had

made inquiry, they would have learned that the party, at whose request they signed, was in fact the only principal, and upon both grounds, to wit, that he, Otis, requested them to sign, and that he was in fact the principal. They could look only to him for indemnity.

2. The sending the note to John Ayer and Tilton, and the striking off their names from it, was no otherwise significant or material than as giving them notice of the settlement of the suit then pending against them, and enabling them to cancel the note, so that the holder could maintain neither that suit nor any other that might afterward be brought upon it, as such. If the note had been thrown into the fire, by the consent of all parties, for the purpose of destroying it, and ending their liability upon it, this would in no way affect the question of contribution, if ultimately Otis Ayer, the principal, should fail to refund the money paid by the plaintiff.

3. The transaction between Tilton and John Ayer, in placing securities in the hands of Tilton, was one with which the plaintiff had nothing to do. If John Ayer chose to make himself principal as to Tilton and Mooney, it was their private arrangement, and whether the plaintiff assented or dissented, was immaterial.

4. The act of Tilton, in surrendering the securities to John Ayer, when he had cut his name from the note, is susceptible of one of three explanations. Either, first, he understood the securities to be in his hands, to indemnify him against his direct liability to the holder, in a suit upon it as the foundation of the action, and not to indemnify him against his ultimate liability to contribute; or, second, he erroneously supposed, if he cut his name from the note, no action could be brought against him for contribution as matter of law; or, third, the question of contribution was not thought of, and he gave up the securities because he did not stop to inquire in relation to his liability to contribute. The latter is the probable explana-

tion, as it was supposed, by the plaintiff at least, that Otis would refund. If the first is adopted, the giving up of the securities has no bearing upon the question of contribution. If the second or third, why should the plaintiff suffer because of Tilton's mistake in a point of law, or want of thought in a matter of fact? He made no representations and held out no inducements to Tilton to induce him to surrender the securities, and the most that can be said in that respect is, that by sending him the note, in order to notify him that he need give himself no further trouble about the action pending, and to enable him to protect himself against any further suit upon it by the holder, by taking his name from it, he incidentally contributed toward placing him in a situation where he could make the mistake. If the plaintiff had, when he forwarded the note, represented to Tilton that he might then safely give up the securities, and by so doing had misled him, there would be some ground for the position that it would after that be a fraud on Tilton to give the plaintiff contribution.

5. In no view that can be taken is Mooney exonerated. He had no interest in the securities in Tilton's hands. The only ground upon which one surety has an equal interest in securities in the hands of a co-surety is, that they are the securities of the principal, the party who ought, as among the signers, to pay the debt.

6. The securities were placed in Tilton's hands without consideration, and could be reclaimed by John Ayer at his pleasure.

7. The facts found in reference to Shaw make him out to be insolvent, and the defendants were rightfully held to contribute one fifth instead of one sixth.

*Stevens & Vaughan, W. C. & S. G. Clarke,* and *Joseph B. Clark,* for the defendants.

1. All knowledge these defendants had of the parties to

the note at the time they placed their names thereon, was what appeared on the note itself. The three Ayers appeared upon the note as principals, and it was in no way brought to the knowledge of these defendants that they were not such in fact. The note was treated by this plaintiff and John Ayer as a note they were to pay.

2. These defendants were original promisors and cosureties on the note, Tilton having before signed as surety, the three whose names were placed on the back of the note were co-sureties with him. 11 N. H. 385, 389; *Martin* v. *Boyce*, 9 Vt. 345.

3. The defendants can not be presumed to know in what capacity the Ayers signed the note, if they signed other than as appears on the note itself, nor can they be presumed to have inquired or learned, nor were they under any obligation to inquire, nor was there any negligence on their part in not inquiring. *Nichols* v. *Parsons*, 6 N. H. 30. The plaintiff can not prove a different relation between himself and the persons whose names were subsequently placed upon the note, than what appears upon the written contract. It is not claimed that these defendants were any thing more than sureties for some party, and as the plaintiff held himself out as principal on the note, when each of these defendants placed their names upon it, it would be a fraud upon them to allow the plaintiff to assume a new character in dealing with the results of his own acts. If the Ayers had wished to be known as sureties they should have signed as such, as Tilton did.

4. The defendants, if ever liable, were discharged by the acts of the plaintiff and his father in giving Tilton, a surety, full indemnity for signing the note, and then, after having paid the note, permitting Tilton to take his name from it and return the securities. The demands placed in Tilton's hands to indemnify him were as much for the benefit of Mooney, Shaw and Kelley, as Tilton. The plaintiff and his father represented themselves to Tilton as princi-

pals. They so dealt and acted with him. That they might do if they pleased. Upon the ground that they were to see the note paid, they gave Tilton their security, and the business was so represented to those whose names were on the back of the note. When Tilton had got the security into his hands he had the legal right to hold on to it until he was free from liability on account of signing the note. That was the contract. This plaintiff subsequently adopted it by shifting notes, and finally by sending the note, as Tilton understood, and as was the exact understanding, to have his liability canceled. It would be a gross fraud upon Tilton, now to turn round and make him pay, after playing that game to get the security out of his hands.

BELLOWS, J. The plaintiff and the two defendants were sureties of Otis Ayer, and at the time of making the note were equally liable as such, unless the liability of Mooney was affected by his name being put upon the back of the note. About a year after the note was given, and upon its being sued, John Ayer, who was also a co-surety with other parties, pledged certain notes, and among them a note of this plaintiff for $500, to David Tilton, as security for his liability as such surety. Afterward, this note of the plaintiff was withdrawn, and another note of the plaintiff for the same sum put in its place.

If this pledge was upon sufficient consideration and valid, then the case would be that the defendant, Tilton, held the plaintiff's note as security against the claim which the plaintiff now makes for contribution, and upon making that contribution, the defendant would be entitled to recover back the amount so paid of the plaintiff. Upon that view the surrender of the pledge upon the supposed release of Tilton's liability, if that release was inoperative, would not, we think, discharge Tilton's interest in the note so given up. Was this pledge then a valid one?

It is to be taken for granted that the notes pledged to

Tilton by John Ayer were transferred in due form by indorsement or otherwise, and the only question as to the pledge is whether, by a formal transfer and delivery to Tilton, he acquired, as against John Ayer, the interest of a pledgee. Had the pledge been made by the principal or one bound to indemnify the surety Tilton, it would have been valid without doubt, although made long after the original note. This continuing obligation to indemnify the surety is ever a good consideration for the promissory note of the principal. The essence of such a contract is the delivery of the thing pledged as security for some debt or engagement, but it is wholly immaterial whether such debt or engagement be that of the pledgee or some other person. If made by a third person at the time of the contract of suretyship, and as an inducement to it, there could be no doubt of its validity. If security were made afterward by the principal in the form of his own note signed by a third person as surety, or if a third person at his request pledge his own goods as security, we apprehend there could be no doubt that the third person would be bound.

In this case it appears that John Ayer, one of the signers of the original note, represented to Tilton and other sureties that he was a principal at the time he pledged the note to him, though in fact he was a surety only; and the inquiry is, does that fact make any difference. This may not be like the case of a promissory note given by a third person who was not bound to indemnify the surety, and given without request of one who was so bound, and which might fail for want of consideration in case a suit was brought to enforce it. But the notes pledged here are assumed to be valid, and would pass upon indorsement and delivery, and by a mere gift perfected by delivery, would, as against the holder, confer a good title. If, then, John Ayer pledged the notes to Tilton, to be held by him until he was indemnified on account of his contract as

surety, could he recall the pledge upon the ground that he was not bound to indemnify him? We are inclined to think he could not.

In Story on Bailments it is laid down that such security may be made as well by a third person as the debtor, on the ground that if there is an assent by the proper parties, it is equally obligatory. Again, in making this pledge, John Ayer assumed to be principal, and was so treated by Tilton, who received the notes so pledged, and as the subsequent transactions show, relied upon them. Could John Ayer be heard afterward to controvert the truth of his representation? Beside, each of the sureties was bound to the others for his due proportion of the burden, and this form of the pledge would cover John Ayer's obligation to indemnify Tilton to the extent, at least, of his share. Under these circumstances, the plaintiff, having paid the note, and relying upon the principal to refund the money paid, delivered the note to John Ayer, with directions to allow Tilton to cut out his name from it, which was done, and Tilton thereupon surrendered to John Ayer the notes pledged as aforesaid. And it appears from the case that all the parties supposed that this cutting off the name of the surety would or did end his liability upon it. Whether, independent of the giving up the securities, it would have that effect or not, is unnecessary to inquire, because we think that, being induced to surrender the securities by the attempted release, it must be regarded either that the plaintiff is estopped now to claim contribution, or else that Tilton's security, by the notes so pledged, still remains; in which case it would be inequitable to require Tilton to pay the amount of his share to the plaintiff, inasmuch as he would be at once entitled to recover it back of him.

As to the estoppel, it has been held that where the creditor had informed the surety that the debt had been paid, and in consequence the surety had lost an opportu-

nity to secure himself, he would be discharged. *Baker* v. *Briggs*, 8 Pick. 130. So when he told the surety he would exonerate him and look to the principal, it was held by *Shaw*, C. J., to be a good defense, upon the ground that it would tend to lull the surety into security and prevent his obtaining indemnity as he otherwise might; and that it would be a fraud afterward to call upon him to pay. *Harris* v. *Brooks*, 21 Pick. 195. If this be the law, as between the creditor and the surety, where the surety is held by an express contract to pay, it applies with much more force to the case of contributions between sureties, which stand not upon the ground of contract, but upon that principle of equity which requires an equality of burden. An action by one surety against another for contribution is an equitable proceeding, and if it appear that the defendant joined in the contract, at the request of the one seeking the contribution, he will not be held to pay. *Taylor* v. *Savage*, 12 Mass. 102, *Cutter* v. *Emery*, 37 N. H. 575. In *Peck* v. *Ellis*, 2 Johns. Ch. 136, Chancellor *Kent* says, " a court of law will sustain an action for contribution between two debtors or sureties under an implied assumpsit arising from the general principle that equality is equity. But contribution between wrong doers will not be enforced." So in *Campbell* v. *Messer*, 4 Johns. Ch. 335, it is laid down that the doctrine of contribution is founded not on contract, but on the principle that equality of burden, as to a common right, is equity. So, in *Deering* v. *Winchelsea*, 2 B. & P. 270, where the plaintiff and defendant were sureties for the same thing, but by different bonds, still the defendant was held liable for contribution, not on the ground of contract, but on account of the equality of burden. In this case the bond signed by the plaintiff had been sued, and he compelled to pay. The court say that contribution is bottomed on the principle of justice and not on contract, though the contract may qualify it. See Sir Wm. Harbert's

Case, 3 Co. 11, b; Story's Eq., secs. 477, 492, and note 1; sec. 495; *Craythorne* v. *Swinburne*, 14 Ves. 165. In these cases it is held that the obligation of a surety to contribute is not founded on contract, except, as is said, so far as an assumpsit may be inferred from the knowledge of the existence of this principle of justice which requires the sureties to share the burden equally. *Craythorne* v. *Swinburne*, above cited. So is *Fletcher* v. *Swan*, 11 N. H. 369; and in accordance with *Cutter* v. *Emery* is *Blake* v. *Cole*, 22 Pick. 97. It is true it does not appear that the plaintiff directed John Ayer to take up the securities pledged to Tilton, but he knew that they were so pledged, and that a discharge of the liability of Tilton and the other sureties upon the note, according to his direction to his father, would naturally cause the return of those securities, and he must therefore be deemed to have assented to it.

It is said by the plaintiff's counsel that the attempted discharge applied only to the claim of the creditor; but we can not assent to this view, for the case finds that all, including the plaintiff, supposed their liability to be ended. The canceling of the note was, to say the least, quite as significant as the statement that the debt had been paid, or that the creditor would look to the principal and exonerate the surety, as in the cases before cited; and in addition to its tendency to lull the parties into security, and prevent their obtaining indemnity, it actually caused the defendant, Tilton, to change his position and give up the security which he already had, and which, in any view that can be taken, was of some value.

As to Mooney, the securities must be regarded as held by Tilton in trust for both, the said John Ayer having made to Mooney the same representation that he was principal, and given him notice of the pledge; and it appears also that Mooney was discharged in the same way.

We see, therefore, no reason for any distinction between the two defendants. There must, then, in both cases, be

*Judgment for the defendants.*