(Decided June 29th, 1898.)

---

STATE USE OF COUNTY COMMISSIONERS OF HOWARD
COUNTY *vs.* JOHN E. HILL AND THE FIDELITY
AND DEPOSIT COMPANY OF MARYLAND.

*Official Bonds— Condition of Bond varying from that pre-
scribed by Statute—Liability of Sureties— Treasurer of
Board of School Commissioners.*

The obligation of a surety upon an official bond is to be strictly
construed.

When the condition of an official bond states the duties of the
officer for whose faithful performance the bond is given, in
a manner different from that prescribed by statute, the lia-
bility of the surety is to be determined by the language of
the bond as executed, and a new term cannot be added by
reading the bond in connection with the statute.

Code, Art. 77, sec. 67, requires the Secretary and Treasurer of
each Board of County School Commissioners to give bond
with surety conditioned that he will faithfully perform the
duties of the office, " pay over and apply all moneys that
shall come to his hands or care as Treasurer to such persons
and in such manner as said Board may, under the provisions
of this article, direct." The bond of a Treasurer of a School
Board executed by the defendant as surety designedly omitted
from its condition the words *under the provisions of this article,*
and provided for the payment of money by the Treasurer to
such persons as the Board should direct. In an action on

the bond, the plaintiff alleged that certain payments were made by the Treasurer without legal authority. These payments had been authorized by the Board. *Held*, that the defendant was not liable for illegal payments of money directed to be made by the Board.

Appeal from the Superior Court of Baltimore City (DENNIS, J.) where the case was tried before the Court without a jury upon an agreed statement of facts.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and PEARCE, JJ.

*John J. Donaldson* and *Jos. D. McGuire*, for the appellant.

A *substantial* compliance with the form required by the statute is all that is needful. *Waters* v. *Riley*, 2 H. & G. 305; *Young* v. *State*, 7 G. & J. 253; *Hamilton* v. *State*, 3 H. & J. 503; *O'Neal* v. *Bridge Co.*, 18 Md. 24; *Friend* v. *Hamill*, 34 Md. 302; *Marlow* v. *Maccubbin*, 40 Md. 137; *Frownfelter* v. *State*, 66 Md. 80. But, indeed, the law in force at the time of the making of the bond is to be read into the bond. *Murfree on Offic. Bonds*, sec. 193, and cases there cited; *Archer's case*, 74 Md. 443.

The bond given, having provided in its condition that the principal should " faithfully perform the duties of secretary and treasurer of the Board of County School Commissioners of Howard County," the failure to recite, or to recite correctly, one of the duties specified in the statute, has no effect on the liability on the bond, as such specified duties are fully covered by the general language used. *Young* v. *State*, 7 G. & J. 253; *Justices* v. *Wynn*, Dudley (Ga.) 22; *Jones* v. *Newman*, 36 Hun. 634. If, therefore, our contention be right, the omitted words are, in effect, part of the condition of the bond, and no orders of the board can discharge the principal and his surety, save such as are " under the provisions of this Article." Article 77, section 67, Code P. G. L.

*The Orders of the Board as a Defence. A.* When the legality of an officer's action is in question, the orders of his superior are no protection if these orders be themselves illegal. *Entick* v. *Carrington,* 19 State Tr. 1030; *Mostyn* v. *Fabrigas,* Cowper. 161, (Captain Gambier's Case) 180; *Thompson* v. *Farrer,* 9 Q. B. D. (C. A.) 372; *Little* v. *Barreme,* 2 Cranch 176; *Mitchell* v. *Harmony,* 13 How. (U. S.) 115; *Bates* v. *Clark,* 95 U. S. 204; *U. S.* v. *Lee,* 106 U. S. 196; *Daniels* v. *Benford,* 10 Upper Can. 481; *McCormick* v. *Bay City,* 23 Mich. 457. And this doctrine does not merely apply to torts, but to disbursement of and accounting for moneys by an inferior officer of a corporation, even though not a municipal corporation. *Minor* v. *Mechanics' Bank,* 1 Peters 46, 71, 72.

It is settled law that all those (as here the surety) dealing with public officers are taken to know the extent and limitations of their powers. *State* v. *Kirkley,* 29 Md. 111; *Horn* v. *Baltimore,* 30 Md. 218; *Reynolds* v. *Baltimore,* 20 Md. 1. The board and the defendant were public officers within this rule, as " every person who is appointed to discharge a public duty and receives a compensation therefor, whether from the treasury of the State or otherwise, is a ' public officer.' " *Henly* v. *Mayor of Lyme,* 5 Bing. 91; 5 *Bac. Abr.* 180; 7 *Bac. Abr.* 280; *U. S.* v. *Maurice,* 2 Brock. (U. S.) 96; *U. S.* v. *Hartwell,* 6 Wall. 385, 393. And it is familiar law that the public, with regard to its claims against a public officer or his sureties, is not bound by the acts or omissions of other public officers. *Hart* v. *U. S.,* 95 U. S. 316; *U. S.* v. *Bee,* 7 U. S. App. 459; *Farmington* v. *Stanley,* 60 Me. 472; *Superv'rs* v. *Otis,* 62 N. Y. 88, 96; *Superv'rs* v. *Catlett,* 86 Va. 158. The board was the mere creature of the statute, a body of limited jurisdiction, and if it acted without legal authority such action is merely void. *Baltimore* v. *Porter,* 18 Md. 302.

*B.* The contention of the defendants, however, is that the defendant Hill was merely a servant of the board, with neither the power nor the duty to pass on the legality of its orders. Such a doctrine certainly could not apply to the allowances to himself, but we contend

further, that it could not apply to any of the payments made by him. That he, and not the board was to have custody of and disburse the funds is clearly shown by the fact that he is the *only officer required to give a bond* under the School Law. (Art. 77, sec. 67.) It is attempted to answer this by reference to section 20 of the same article, which provides that " all the property . . . money, funds," etc., " are . . . vested in the Board of County School Commissioners, and their successors in office." The argument amounts to this, that Hill could not be responsible for an improper appropriation of the School Funds, because the *title* to them was not in him! It is almost needless to say, that such a principle would be destructive of the public security supposed to be protected by every official bond. A bond is required of an officer for the very reason that the money he handles is *not* his.

A county treasurer who pays on the order of County Commissioners, is in the same position, and there is no lack of decisions that payment made by him on their illegal order, makes his bond responsible. *Supervisors* v. *Wandel*, 6 Lansing 33; *Supervisors* v. *Knipfer*, 37 Wis. 496. It is contended that Hill, being a mere appointee of the board, does not come within the principle stated. An examination of the cases cited will show that such a distinction does not exist. Not only does the treasurer, &c., come directly within the definition of a "public officer," as given by Best, Ch. J., and Marshall, C. J., and in the other authorities above cited, but his position is quite as much a creature of the statute as that of the board itself. By an absolutely *mandatory* provision of the law (Art. 77, section 18) the *first* duty of the board, after organization at its *first* meeting, is to appoint a person not a member of the board, examiner, secretary and *treasurer*. Further, notice of his election is to be sent to the comptroller (of the State) signed by the president. (Art. 77, *ibid.*) And why? For but one reason, in order that that officer may know to whom to make distribution of the State School Fund, as it is *payable to such treasurer.* (Art. 77, sec. 101.) Again

(section 22 of same article), special taxes levied by the county are to be paid, on the order of the board, to its treasurer. By section 67 of the same article his position is made still clearer, as it shows that he is the *only* officer who is contemplated as both receiver and disburser of the County School funds, and this conclusion is made irresistible by the fact that he is the *only* officer in the whole public school system who is required to give bond.

The board, accordingly, is not the custodian of the money, does not receive it and does not pay it out, but both are done by the treasurer, payments being made by him " to such persons and in such manner as the board may, *under the provisions of this article*, direct." (Art. 77, sec. 67.) It is plain that board and treasurer were intended to be each a check on the other. Such a dual control is familiar in the case of the comptroller and treasurer of the State, the comptroller and register of the city of Baltimore. In both these cases, the comptroller neither receives nor pays out the money, but it is received and paid out by the one, upon the warrant of the other. But such warrant, if illegal (that is, without a proper legislative or constitutional appropriation), does not authorize payment. *Thomas* v. *Owens, supra.* (The argument as to the legality of the orders of the board is omitted.)

*Edgar H. Gans* and *N. Winslow Williams* (with whom were *Thomas A. Whelan* and *B. H. Haman* on the brief), for the appellees.

The principle is familiar that a bond is to be read in connection with the statutes of the State as is every other contract. But this is only for the purpose of interpreting its terms. For example, if a bond is given to cover a term of office, reference may be had to the constitution and statutes of the State to ascertain what that " term of office " is; or a bond conditioned generally that an officer shall faithfully perform the duties of his office, may be explained by a reference to the statutes in which these duties are set forth. This is what is meant by reading the statute into the bond. *Archer* v. *State*, 74

Md. 451. But no case has been decided anywhere that you can *add a new term to a contract* by a statute. Parties have a right to make such contracts as they please. If a statute requires that a bond of a certain kind shall be given, and the obligor and his sureties do not desire to be bound to the full extent of the statute, and offer a bond containing less obligation than that required by the statute, the State or county authority may reject the bond as not containing the obligation required, or they may accept it with its narrowed obligation. In the event of its acceptance, the only question which could arise would be, whether the bond was a valid statutory bond, *as far as it went,* or being invalid as a statutory bond, it was enforceable as a common law bond. Such questions have often arisen. But it never has been urged or decided, that if accepted, the obligor is liable beyond the meaning of the terms of the bond, merely because he would have been liable had he furnished a bond of larger obligation, such as the statute required.

The cases where a bond contains general language such as—" that he shall faithfully perform the duties of his office," and then contains the enumeration of certain specific duties, omitting others, usually deal with the question whether the bond is valid at all as a statutory bond. *Young* v. *State,* 7 G. & J. 253; *Farrar* v. *U. S.,* 5 Pet. 388.

But the case at bar is not a case where there are general words in the bond—" that he shall faithfully perform the duties of his office "—and there are omissions in the bond of the particular duty, the breach of which is sued for; but a case where there is a statement of the particular duty, the breach of which is sued for in the bond. In this case the bond does not *omit* in its condition the duty of paying over money, but states it. It is true it does not state the duty in the language of the statute, but it does state, *as to this special duty of paying over money,* that, if " he shall pay over and apply all moneys that shall come to his hands or care, to such persons and in such manner as said Board of County

School Commissioners shall direct," the bond shall be void. When a contract contains general language, under which the duty of the contractor may be found by *construction*, and afterwards expresses the duty in a different way in *express terms*, manifestly the special description of the duty in express terms governs. This is a general rule in the interpretation of statutes, wills and contracts. "A general description must yield to, and be controlled by, a more particular and certain designation." *Douglass* v. *Blackford*, 7 Md. 23.

The duty of Hill, therefore, for which these obligors bound themselves, so far as the disbursement of money was concerned, was to "pay the money to such persons and in such manner as the Board might direct." This was the express obligation to which they limited themselves. And this is what they intended to do by leaving out the other language provided by the statute. The Fidelity Company would not have entered into the contract if they thought they were guaranteeing the legal infallibility of the board in giving orders to its treasurer.

How can it be contended that the treasurer is liable for any legal mistakes of the board as to disbursements? If he is liable then he has the right, and it would be his duty in self protection to hold up every order of the board until he was satisfied that it was proper. His judgment would be paramount to the judgment of the board. He would have the right to say as to every case where ingenuity could suggest a doubt as to the strict legality of a disbursement—"I won't pay it until you get a decision from the Court as to your order." Such a conclusion would be absurd. It would efface the board and put practically the administration of the school system in the hands of the clerk, the secretary and treasurer, even though by express statute "he shall be present at every meeting of the Board and may debate any question before them, *but shall have no vote*." Code 77, section 67. In fact, he is mere custodian of the fund, subject to orders of his superior officers as to its disposition. If he is ordered to dispose of it in a certain way and he refuses, the board can dismiss him;

if he obeys, and it turns out on minute investigation that the board acted without authority, then the appellant says his bond is liable. If he disobeys he loses his place; if he obeys he pays the money out of his own pocket or those of his surety. Suppose the board should order all money kept deposited in bank subject to their check. This they have an undoubted right to do. Then they should draw a check on the fund, direct the treasurer to have it cashed and direct him to pay the cash thus received under their orders for a school purpose. Would his bond be liable if the order turned out to be unauthorized, for thus acting as the mere servant or hand of the board? When an officer is so situated that he has no right to exercise judgment, when the discretionary power is vested not in him, but in a superior officer, then he is never liable for obeying orders. *Conner* v. *Keese*, 32 Hun. 103; *Tuttle* v. *Cook*, 15 Wendell 274; *State* v. *Allen*, 5 Kans. 221.

PEARCE, J., delivered the opinion of the Court.

This is an action of debt for the use of the Board of County School Commissioners of Howard County, upon the official bond of John E. Hill as secretary and treasurer of such board; the Fidelity and Deposit Company of Maryland being his surety upon said bond, and the suit being brought to recover the amount of certain payments, made by him during his term of office, and claimed by the appellants to have been made without warrant of law, and in violation of the condition of his bond. The appellee claims not only that all these payments were ordered by the board of School Commissioners, but that they were authorized by law, and further that even if not warranted by law, that the defendants are not liable upon a proper construction of the language of the bond, for any payments made by Hill on the order of the board; and the agreed statement of facts upon which the case was tried below, shows that each of these payments now sought to be recovered, was made upon the formal recorded order of the Board of County School Commissioners of Howard County.

If the payments thus made do not constitute a breach of the condition of the bond there can of course be no recovery upon the bond in respect to said payments, and we proceed at once to consider this question.

The material part of the condition of the bond is as follows: " that if the above bound John E. Hill shall faithfully perform the duties of Secretary and Treasurer of the Board of County School Commissioners of Howard County, and shall pay over and apply all moneys that shall come to his hands or care as Treasurer, to such persons and in such manner, as said Board of County School Commissioners shall direct . . . . then the above obligation to be void." Art. 77, sec. 67, of the Code of Public General Laws of Maryland, requires the secretary and treasurer to give bond to the State of Maryland, with surety to be approved by the board; and in such penalty as it shall determine, with condition " that he will faithfully perform the duties of Secretary and Treasurer, pay over and apply all moneys that shall come to his hands or care as Treasurer, to such persons and in such manner as said Board may, *under the provisions of this article,* direct." It will thus be seen that in the condition of the bond given, the words of the statute, " under the provisions of this article," are omitted. It appears from the agreed statement of facts that Hill offered to give to the board, a bond with private persons as sureties, to be satisfactory to the board, but that the board deeming it best for the interests of the school fund required a bond in a regular surety company, and that thereupon the bond now sued on was given and approved; and it further appears from said statement, that the words, " under the provisions of this article," were deliberately omitted from the condition of the bond, by the surety company, for the express purpose of preventing any liability attaching to it, by reason of any mistake made by the board itself in ordering the payment of any moneys by Hill, and that the surety would not have entered into any bond, the effect of which would be to guarantee the legal correctness of the orders of the board, in addition to the honesty and integ-

rity of said Hill, his faithful performance of duty, and a strict compliance with the orders of his superiors.

In *Archer* v. *The State*, 74 Md. 450, Archer being then State treasurer, and duly qualified as such, was on January 13th, 1888, appointed by the Legislature his own successor, and on January 27th he executed a new bond with security, but neglected further to qualify under that appointment until November 18th, 1889, when he took the prescribed oath, and the Governor approved his bond. In a suit by the State on this bond, it was held no action could be maintained thereon, and this Court said: " It is familiar law that the contract of a surety upon an official bond is subject to the strictest interpretation. They undertake, in the language of JUDGE COOLEY, ' for nothing which is not within the strict letter of their contract. The obligation is *strictissimi juris*, and nothing is to be taken by construction against the obligors. They have consented to be bound to a certain extent only, and their liability must be found within the terms of that consent.' The bond recites that he was duly appointed treasurer January 13th, 1888, pursuant to the Constitution of the State, and is conditioned for the faithful discharge of all the duties required of him by the Constitution and laws in all things pertaining to his office, *under that appointment.* That is the contract into which the sureties entered. It would be doing violence to its terms, if the contract could be read as making the sureties responsible for the discharge of any duties save those that became incumbent on him by that appointment and a due qualification thereunder." The above citation will serve to show with what strictness this Court protects sureties against mere constructive liability.

In the case at bar, the breach alleged is that the payments claimed, were made without authority of law, while the condition of the bond the breach of which is alleged, is that all payments should be made to such persons and in such manner as the board should direct. Tested by the plain and unequivocal language of this condition, Hill has fulfilled the letter of his contract,

and it was to that extent only the surety consented to
be bound.   Beyond that it can only be bound by con-
struction, and this Court has said " nothing can be
taken by construction against sureties."   It would seem
where the language of a contract is thus plain, and the
utterance of this Court just quoted is so emphatic, that
we might rest upon it without hesitation, but the appel-
lants have so earnestly and ably argued the authorities
upon which they rely that we think it proper to give
them full and respectful consideration.

Their first contention is, that a substantial compliance
with the form required by the statute is all that is need-
ful, but we do not find any of the cases cited upon this
point to be satisfactory authority as applicable to this
case.   In *Hamilton* v. *The State*, 5 H. & J. 503, the bond
of an administrator was not in the words of the form
prescribed by the Act of 1798, but an express part of
the condition of the bond was that he should faithfully
pay all just claims against the deceased.   The breach
assigned was non-payment of a claim duly proved for
medicine and attendance on the deceased, and on de-
murrer plaintiff was allowed to recover, the non-payment
being a clear breach of the particular express condition,
notwithstanding some informality in the bond in other
respects.   In *Waters* v. *Riley*, 2 H. & G. 305, the suit
was upon the bond of an administrator *de bonis non*, but
the words " not already administered " were omitted
from the condition of the bond, and the sureties were
held not liable for a misapplication of the assets not
theretofore administered, as to which no duty was im-
posed by the language of the condition of the bond.
JUDGE ARCHER, in a dissenting opinion, said that where
a bond is so drawn as to include every obligation im-
posed by the statute, and to afford every defence allowed
by it, a slight variance from the prescribed form should
not avoid the bond, and he expressed the view that as
the bond in that case was for the discharge of the duties
of an administrator *de bonis non*, the bond was perfect
without the omitted words, and that when read in the
light of this interpretation " the condition of the bond

corresponded in every respect with the condition prescribed by the Act." But, waiving the fact that this expression is taken from a dissenting opinion, and conceding for the purposes of argument only, that it was weighty in that case, we do not perceive that it can be fairly applied in this case where, by no rule of interpretation, and by no deduction from any language in the bond, can its condition be regarded as corresponding with that prescribed by the Code.

In *Young* v. *The State*, 7 G. & J. 253, the condition of a sheriff's bond was that he " should well and faithfully execute the same office in all things appertaining thereto," and it then proceeded to enumerate certain of the duties prescribed in the statute, but omitted one of these prescribed duties, viz., " to detain all persons by him taken in execution," and the Court said: " Under this provision we think the sheriff is bound to the discharge of every duty which the omitted words, if inserted in the condition of the bond would have imposed upon him." That was just such a case as was referred to in *Farrar* v. *The United States*, 5 Peters 388, where the Court said: " Where the conditions are cumulative, the omission of one condition cannot invalidate the bond, so far as the other condition operates to bind the party." In *Farrar's case* the Act of Congress required the bond of a United States officer to contain a condition that he should " well and faithfully discharge the duties of this office," and also that he should " faithfully disburse the public moneys," but the last condition was omitted from the bond, and the Court reversed the judgment for error in the manner of rendering it, but declined to decide " whether the omission of the express words which imposed the liability for faithful disbursement of money, does not preclude resort to their restoration incidentally by proof."

But the case at bar is not one where there is a general requirement in the bond for the performance of duties, without special provision for the performance of any special duty, the breach of which is sued for, but it is a case where there is a statement of the particular

condition, the breach of which is sued for and where the
condition so stated does not agree with that prescribed
in the statute. The bond we are considering does not
omit from the condition expressed, the duty of paying
over money that comes to his hands as secretary and
treasurer. It states that duty clearly and explicitly, but
it states it in different terms and under different condi-
tions from those prescribed in the statute, and the lia-
bility of Hill's surety in this respect must be determined
and measured by the terms and conditions which were
incorporated, and not by those which should have been
incorporated in the bond.

Neither in 18th, 34th or 40th Md. Rep., cited by ap-
pellants, were the liabilities of sureties involved. In
*O'Neil* v. *Bridge Co.*, 18 Md. 24, the question was as to
the validity of an assessment for taxation, and it was
held an assessment ought not to be vacated, and the
property be released, because a legal provision, which
was merely directory, had not been strictly followed.
In *Friend* v. *Hamill*, 34 Md. 302, a judge had certified
that the list of jurors were selected " in conformity with
the Acts of Assembly, in such case made and provided,"
while the statute directed that the certificate should be
" in conformity with and according to the spirit and in-
tent of this Act." On a challenge to the array of jurors,
it was held that the certificate made, was " a substantial
compliance with the statute." In *Marlow* v. *McCubbin*,
40 Md. 132, an affidavit to a mortgage stated that the
consideration was *bona fide* as therein set forth, and on
objection that the omission of the word *true* was fatal
to the affidavit, it was held that the affidavit included a
plain averment that the consideration set forth in the
deed was the true and only cause of its being made, and
that the insertion of the word *true* would not have im-
parted additional substance or force. *Frownfelter's case*,
66 Md. 80, does involve the liabilities of sureties, but we
do not think it can help the appellants' contention.
The Act of 1874 required the collector of taxes to ac-
count for and pay over moneys " at such time as the
law shall direct," and the bond given in that case pro-

vided for payment " at such time as the County Com-
missioners shall by law direct," and this variance was
held immaterial.   It is difficult to see how it could have
been held otherwise, since under the language used in
the bond the County Commissioners could direct no
time except that which the law directed, so that in any
event the condition of the bond corresponded exactly
with that of the statute.   We have examined all the
cases cited under section 193 of *Murfree on Official
Bonds*, and it is apparent from these cases, that the
author when he declared that " the law enters into and
is a part of every contract," was announcing a rule of
*interpretation* for such contracts, and that he did not
mean that the law could import into the contract a term
or condition which, though directed by it to be incor-
porated in the contract, had been deliberately excluded
by the parties.

The appellants relied upon two cases from other
States, both of which do sustain their contention but
which we are unable to accept as authority to control
this case.

The first of these cases, *Jones* v. *Newman*, 36 Hun.
(N. Y.) 634, was a suit upon a constable's bond, the
breach charged being the neglect to return an execu-
tion.   The condition of the bond was that he should
" faithfully discharge the duties of Constable, and pay
over all moneys received by him as Constable."   This
was not the form prescribed by the statute, which in-
cluded the duty to return executions, and it was urged
that no recovery could be had for the breach charged
as not within the condition expressed, but the Court
held otherwise, saying: " He and his sureties were the
persons to see that it was in the right form, as it was his
duty to give bond with proper sureties."   Now, if the
duty to return an execution directed to a constable,
exists apart from the statute which declares that it shall
be expressed as part of the condition of the bond, then
the failure to return an execution would be a clear
breach of the general condition faithfully to discharge
the duties of constable, and the decision could be well

sustained *upon that ground;* but if not an inherent duty
of the office, then it could not be so sustained, and it is
plain from the language we have quoted that the de-
cision was not made upon that ground, but upon the
ground that the sureties wrongfully omitted a condition
which should have been expressed in the bond in order
to conform to the statute and to bring into existence a
statutory liability.    That was not a decision of the high-
est Court of the State and on reference to the case cited
by the judge to sustain him (*Gerould* v. *Wilson,* 81 N. Y.
573), it will be seen that it cannot be cited for that pur-
pose.    There letters of administration were issued to B
by the Surrogate of Steuben County, and he gave bond
with sureties that he would " faithfully execute the duties
of administrator, and obey all the orders of the Surro-
gate of *Ontario* County, *or of any other officer or Court
having jurisdiction in the premises,*" and it was held that
the mistake in naming the Surrogate of Ontario did
not vitiate the bond, because leaving out that clause,
enough remained to meet the requirements of the
statute, and to hold the obligors.    CH. J. FOLGER said:
" The Surrogate of Steuben is another officer having
jurisdiction in the premises, and his Probate Court is
another Court having that jurisdiction.    The require-
ment of the statute is that the bond be conditioned that
the principal in it will obey the orders of the Surrogate
who issued letters to him.    The Surrogate of Steuben
did issue those letters, so that Surrogate falls within
the requirement of the statute and the force of the con-
dition *as it reads in the bond.*"    It is thus clear that the
whole argument of the judge is to show that the condi-
tion of the bond is in accord with the condition of the
statute, and not to justify the holding of the sureties,
where the condition of the bond varies from that of the
statute and there has been no breach of the condition
expressed in the bond.    From such a decision, based
upon such reasoning, the decision in *Jones* v. *Newman*
can derive no support.    The other case relied on by
appellants is *The Justices of the Inferior Court of Colum-
bia* v. *Wrynn,* reported in Dudley (Georgia) Rep. p. *22,*

in which it is declared that " the obligor in a bond can in no case be permitted to take advantage of the omission of statutory conditions when the omission is beneficial to himself," but it will be found on examining all the cases cited by the Court in reaching that conclusion, that all these cases dealt only with the question whether a bond was *in all respects void* because its condition did not conform to the statute in every respect. Indeed, in one of the cases cited (*Williams* v. *Yarborough,* 2 Devereux N. C. Rep. 14,) the Court said: " I think he who is called on to fulfil it, cannot say the bond is void, or even without the statute, *as to the obligations which the bond imposes,* because there are other obligations which ought to have been imposed on him, and which have been omitted." From which it may be safely inferred that while the Court would not have held such bond void as to breach of conditions it did contain, it would not have permitted recovery against sureties for breach of a condition into which they had not entered. In the Georgia case the action was on an administration bond and the statute prescribed as part of the condition of the bond, that a true and perfect inventory should be returned of all goods which should come to his hands, possession or *knowledge,* but the condition expressed in the bond omitted the words " *or knowledge.*" This decision was not made by a constitutional Court, there being no Court of Errors in that State prior to the Constitution of 1846, in spite of repeated efforts to establish such a Court, but in order to secure some degree of uniformity in the administration of the laws, the judges of the Superior Courts began about 1837 to hold semi-annual conventions for consultation upon difficult and doubtful questions in their respective Courts, and this case was decided by the Superior Court of Columbia after such consultation. For this disinterested and patriotic action, these Georgia judges deserved the gratitude of their people and the respect and admiration of the legal profession, but the decisions thus rendered, however learned, cannot be invested with the authority that is borne by a constitutional Court of last resort,

created for the purpose of reviewing the decisions of trial Courts.   We have been referred to no other cases and we have found none which sustain the views of the appellants, and it follows from what we have said that we are of opinion the first prayer of the defendant, which practically directed a verdict in its favor, was properly granted, and the judgment of the Superior Court must be affirmed.   In this view of the case, it becomes unnecessary to pass upon any of the other questions presented in argument, some of which would be matters of interesting discussion.

> *Judgment affirmed with costs above and below.*

(Decided June 29th, 1898.)